(No. 67299.—

KENNETH A. KOZEL, Appellant, v. THE STATE BOARD OF ELECTIONS *et al.*, Appellees.

*Opinion filed November 29, 1988.—Rehearing denied January 30, 1989.*

RYAN, J., took no part.

Petz & Kozel and Kenneth A. Kozel, *pro se*, of La Salle, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and William D. Frazier, Assistant Attorney General, of Chicago, of counsel), for appellee State Board of Elections.

Louis E. Olivero & Associates, of Peru, for appellee Douglas B. Olivero.

JUSTICE MILLER delivered the opinion of the court:

The objector, Kenneth A. Kozel, initiated this action as a challenge to the nomination papers filed by Douglas B. Olivero, a candidate for the office of resident circuit judge of La Salle County. Sitting as an electoral board, the State Board of Elections rejected Kozel's objections and declared that the candidate's nomination papers were legally sufficient. The circuit court of Sangamon County upheld the State Board's decision on judicial review, and the appellate court subsequently affirmed the judgment of the circuit court (168 Ill. App. 3d 501). We allowed the objector's petition for leave to appeal (107 Ill. 2d R. 315(a)).

On December 14, 1987, pursuant to article 7 of the Election Code (Ill. Rev. Stat. 1987, ch. 46, pars. 7—1 through 7—65), Olivero filed with the State Board of Elections a statement of candidacy and nominating petitions as a Republican candidate to fill a vacancy in the office of resident circuit judge of La Salle County. La Salle County is part of the Thirteenth Judicial Circuit, which also includes Bureau and Grundy Counties. (See Ill. Rev. Stat. 1987, ch. 37, par. 72.1.) On December 21, 1987, the objector, who also was a Republican candidate for the office of resident circuit judge of La Salle County, filed a petition with the State Board of Elections challenging candidate Olivero's nomination papers. Olivero had submitted nominating petitions containing some 963 signatures in support of his candidacy, more than the 500 required by statute (see Ill. Rev. Stat. 1987, ch. 46, par. 7—10(h)), and the objector challenged 528 of the signatures.

The objector's principal complaint, pertaining to 400 signatures, concerned the eligibility of persons registered to vote in Bureau and Grundy Counties to sign and cir-

culate petitions for candidates for the office of resident circuit judge of La Salle County. An election to fill a vacancy in the office of resident circuit judge "shall be for the appropriate county or unit" (Ill. Rev. Stat. 1987, ch. 37, par. 72.42—1), and therefore only residents of La Salle County would be eligible to vote in the primary and general elections for candidates for the position. The objector contended that only persons who are eligible to vote in an election involving a particular office are eligible to sign and circulate the nominating petitions of candidates for the position.

The objector also challenged, on purely factual grounds, about 128 signatures of residents of La Salle County. The objector alleged that some of the signatories had signed the candidate's petitions more than once, that other signatories were not registered to vote at the addresses indicated on the petitions, and that others did not sign the petitions in their own proper person. The objector concluded that the candidate's petitions contained not more than 435 valid signatures, less than the 500 required. The objector asked that the candidate's nomination papers be declared insufficient and that his name be excluded from the primary election ballot.

The State Board of Elections convened on December 28, 1987, as an electoral board—and in that capacity it will be referred to here as "the State electoral board"— to hear and pass upon the objections to the candidate's nomination papers. At the conclusion of the meeting, the case was assigned to a hearing officer. Following an evidentiary hearing, the hearing officer issued a report and recommended finding on the matter. The hearing officer viewed as dispositive the question whether persons registered to vote in Bureau and Grundy Counties were eligible to sign and circulate nominating petitions of candidates for the office of resident circuit judge of La Salle County. In the hearing officer's view, the objector ar-

gued "with some persuasiveness" that only residents of La Salle County should be allowed to sign and circulate nominating petitions for the position, but the hearing officer concluded that section 7—10(h) of the Election Code authorized voters throughout the circuit to sign and circulate nominating petitions of candidates for that office. Section 7—10(h) provides that a candidate for judicial office must obtain the signatures of "at least 500 qualified primary electors of his or her judicial district or circuit, as the case may be" (Ill. Rev. Stat. 1987, ch. 46, par. 7—10(h)); with respect to circuit court judgeships, the statute makes no distinction between candidates for resident positions, who run only within their county, and candidates for at-large positions, who must run throughout their circuit (see *Thies v. State Board of Elections* (1988), 124 Ill. 2d 317, 319 (discussing differences between resident and at-large positions)). Relying on section 7—10(h), the hearing officer concluded that the signatures of voters of Bureau and Grundy Counties, and the signatures on petitions circulated by voters of Bureau and Grundy Counties, were valid and unobjectionable. Those signatures, together with the ones not challenged by the objector, gave the candidate more than the 500 required by statute, and therefore the objector's remaining challenges to the candidate's petitions were moot. The hearing officer also noted, however, without making any express factual findings, that objections to a number of the La Salle County signatures appeared to be well founded. The hearing officer recommended that the candidate's nomination papers be declared valid.

The State Board of Elections reconvened on January 13, 1988, as an electoral board to consider the hearing officer's report and recommendation. At the meeting the objector argued that the hearing officer had erred in relying exclusively on section 7—10(h), and the objector maintained that the provisions of the Election Code,

when read in their entirety, compelled a different result. At the conclusion of the meeting, the State electoral board adopted the hearing officer's recommendation by a vote of 6 to 0; one member was absent.

On January 15, 1988, the State electoral board issued a written decision in the matter, ordering that the objections to the candidate's nomination papers be denied. Like the hearing officer, the electoral board believed that section 7—10(h) of the Election Code authorized voters throughout a judicial circuit to sign and circulate nominating petitions of a candidate for the office of resident circuit judge. Therefore, candidate Olivero's nominating petitions contained a sufficient number of valid signatures, and the State electoral board accordingly declared the candidate's nomination papers "to be legally valid in whole or substantial part." Inexplicably, the electoral board's January 15 decision also ordered that the candidate's name not be certified for inclusion on the primary election ballot. Four days later, on January 19, the State electoral board issued an amended decision, which ordered certification of the candidate's name for inclusion on the primary ballot. With the exception of that correction, and the correction of a statement in one part of the initial decision misidentifying the objector in this case, the amended decision was identical with the initial decision in all respects.

On January 28, 1988, the objector filed a petition in the circuit court of Cook County for judicial review of the State electoral board's amended decision. The cause was later transferred to the circuit court of Sangamon County on candidate Olivero's motion for a change of venue. The candidate later moved to dismiss the action, arguing that the circuit court lacked subject matter jurisdiction over the cause because the objector had not filed his petition for review within the time allowed by statute. In an order entered on February 22, 1988, the cir-

cuit judge denied the candidate's motion to dismiss the action for lack of subject matter jurisdiction. Also, the judge affirmed "[t]he decision of the State Board of Elections certifying Douglas B. Olivero as a candidate for resident Circuit Judge of La Salle County," citing section 7—10(h) of the Election Code in support of that result.

Both parties appealed from the circuit court's decision, and the appellate court affirmed the judgment. The appellate court denied a request by the candidate to dismiss the cause for lack of subject matter jurisdiction, finding that the objector had filed a timely petition for judicial review of the State electoral board's amended decision. Refusing to accept the objector's arguments to the contrary, the appellate court also ruled that the State electoral board was the appropriate electoral board to consider objections to the candidate's nomination papers, and that the State electoral board was properly convened at its December 28, 1987, meeting through the use of an interconnecting telephone conference call. Finally, the appellate court held that section 7—10(h) of the Election Code permitted voters registered in any county within a judicial circuit to sign nominating petitions of candidates for the office of resident circuit judge of a county in that circuit. While the case was pending in the appellate court, Olivero defeated Kozel in the March 15, 1988, Republican primary election.

We consider first the parties' arguments concerning the effect of the State electoral board's issuance of an amended decision in the case. The objector contends that the electoral board was without authority to alter its initial decision and that the amended decision is void. The objector believes that the board's initial order refusing to certify the candidate's name for inclusion on the primary ballot is valid and must be given effect, in light of the candidate's failure to obtain review of the ruling. Ac-

cording to the objector, his own name should now replace the candidate's name on the ballot for the November general election; the objector attributes his defeat in the primary election to the appellate court's failure to rule on the case—presumably in his favor—before the election was held.

The candidate does not disagree with the objector's argument that the State electoral board lacked authority to modify its initial decision in the matter. The candidate does not believe, however, that the electoral board's refusal in its initial decision to certify his name for inclusion on the primary ballot could have had any effect. The candidate contends that the role of an electoral board is limited by statute to a consideration of the objections to a candidate's nomination papers and that the State electoral board had no authority to certify, or to refuse to certify, his name for inclusion on the primary election ballot. The candidate concludes that the statement in the electoral board's initial decision that it was not certifying him as a candidate was surplusage, and that the effect of the initial decision was confined to the denial of the objections to his nomination papers. Alternatively, the candidate contends that the amended decision should be deemed to have been issued *nunc pro tunc*, and that it therefore did not extend the statutory time period for filing a petition for judicial review.

The State Board of Elections maintains that, acting as an electoral board, it was authorized to amend the initial decision to correct the language regarding certification of the candidate. The State Board of Elections explains that the amended decision of the State electoral board was made effective on its date of issuance, rather than *nunc pro tunc*, to avoid causing any prejudice to the objector's right to seek judicial review of the ruling.

Section 10—8 of the Election Code provides that nomination papers "being filed as required by this Code,

and being in apparent conformity with the provisions of this Act, shall be deemed to be valid unless objection thereto is duly made," with certain exceptions not relevant here. (Ill. Rev. Stat. 1987, ch. 46, par. 10—8.) "Any legal voter of the political subdivision or district in which the candidate *** is to be voted on" may file an objector's petition to a candidate's nomination papers; the petition must specify the nature of the objections to the candidate's nomination papers and the relief desired. (Ill. Rev. Stat. 1987, ch. 46, par. 10—8.) Objections to candidates' nomination papers are heard and passed upon by electoral boards, which are established under section 10—9 of the Election Code (Ill. Rev. Stat. 1987, ch. 46, par. 10—9). Cases are assigned to the different electoral boards on the basis of the office involved. Because the office in this case concerned a judicial "circuit situated in more than one county," the matter was assigned to the State Board of Elections, in its capacity as an electoral board. (See Ill. Rev. Stat. 1987, ch. 46, par. 10—9(1).) In this regard, we note the objector's contention that the matter of his objections should have been assigned to the county officers electoral board rather than to the State electoral board. The county officers electoral board is designated by statute to hear and pass upon objections to nomination papers of candidates for "judicial offices of a district or circuit coterminous with or less than a county," among other offices. (Ill. Rev. Stat. 1987, ch. 46, par. 10—9(2).) In light of our decision in this case, consideration of this additional argument is unnecessary.

The powers and duties of the electoral boards are delimited in section 10—10 of the Election Code. (Ill. Rev. Stat. 1987, ch. 46, par. 10—10.) An electoral board is authorized "to administer oaths and to subpoena and examine witnesses," and it may compel "the production of such books, papers, records and documents as may be

evidence of any matter under inquiry." (Ill. Rev. Stat. 1987, ch. 46, par. 10—10.) Section 10—10 also provides:

"The electoral board shall take up the question as to whether or not the certificate of nomination or nomination papers or petitions are in proper form, and whether or not they were filed within the time and under the conditions required by law, and whether or not they are the genuine certificate of nomination or nomination papers or petitions which they purport to be, and whether or not in the case of the certificate of nomination in question it represents accurately the decision of the caucus or convention issuing it, and in general shall decide whether or not the certificate of nomination or nominating papers or petitions on file are valid or whether the objections thereto should be sustained and the decision of a majority of the electoral board shall be final subject to judicial review as provided in Section 10—10.1. The electoral board must state its findings in writing and must state in writing which objections, if any, it has sustained."

Judicial review of electoral board decisions is governed by section 10—10.1 of the Election Code, which states, in pertinent part:

"[A] candidate or objector aggrieved by the decision of an electoral board may secure judicial review of such decision in the circuit court of the county in which the hearing of the electoral board was held. The party seeking judicial review must file a petition with the clerk of the court within 10 days after the decision of the electoral board." Ill. Rev. Stat. 1987, ch. 46, par. 10—10.1.

In the initial decision in this matter, issued on January 15, 1988, the State electoral board denied the objector's challenges to the candidate's nominating petitions and declared that the candidate's nomination papers were legally sufficient. The electoral board also stated, for no reason appearing in the record, that the candidate's name would not be certified for inclusion on the primary election ballot. Neither party sought judicial review of the January 15 decision. On January 19, the

State electoral board issued an amended decision. The electoral board denied the objections to the candidate's nomination papers and stated that the candidate's name would be certified for the primary ballot. On January 28, 1988, the objector filed a petition in the circuit court for judicial review of the State electoral board's amended decision.

We agree with the candidate that the part of the State electoral board's initial decision ordering that his name not be certified for inclusion on the primary election ballot was surplusage. As an administrative agency established by statute, an electoral board may exercise only the powers conferred upon it by the legislature. (See *Weingart v. Department of Labor* (1988), 122 Ill. 2d 1, 17; *City of Chicago v. Fair Employment Practices Comm'n* (1976), 65 Ill. 2d 108, 112-13.) Under section 10—10 of the Election Code, the function of an electoral board is limited to a consideration of objections to a candidate's nomination papers. An electoral board has no authority to certify, or to refuse to certify, candidates. As the statutes indicate, the function of an electoral board is to hear and pass upon objections to a candidate's nomination papers. For the office at issue here, certification of candidates' names for inclusion on the primary ballot was a function reserved to the State Board of Elections, acting in its own capacity. (See Ill. Rev. Stat. 1987, ch. 46, par. 7—14.) And under the Election Code, the State Board of Elections may not certify a candidate whose nomination papers have been found insufficient by an electoral board. Section 7—14 of the Election Code provides, "Subject to appeal, the names of candidates whose nomination papers have been held invalid by the appropriate electoral board provided in Section 10—9 of this Code shall not be certified." (Ill. Rev. Stat. 1987, ch. 46, par. 7—14.) If a mistake occurs in certification, it may be corrected. Section 7—14 provides,

"The State Board of Elections, or the county clerk, as the case may be, shall issue an amended certification whenever it is discovered that the original certification is in error." The State Board of Elections and the State electoral board therefore perform distinct roles in the election process. That part of the State electoral board's decision regarding certification of the candidate's name could have served only to recapitulate its decision regarding the objections to the candidate's nomination papers. Having heard and passed upon the objector's challenges, the State electoral board had completed its duties. Certification of the candidate's name was a function of the State Board of Elections.

Contrary to the argument of the State Board of Elections, we do not believe that the language in the electoral board's initial decision purporting to deny the candidate's certification rendered the order unenforceable. At that time the State electoral board denied the objections to the candidate's nominating petitions and declared that his nomination papers were legally sufficient in whole or substantial part. The electoral board's decision was complete and effective, and the objector, as the party aggrieved, could have then instituted a proceeding for judicial review of it.

Accordingly, we do not believe that the State electoral board's issuance of an amended decision in this matter served to extend the time in which the objector could prosecute a proceeding for review. Article VI, section 9, of the Illinois Constitution provides, "Circuit Courts shall have such power to review administrative action as provided by law." (Ill. Const. 1970, art. VI, §9.) The review procedure at issue here is a statutory creation, and compliance with the applicable time limit is an antecedent of jurisdiction. (See *Fredman Brothers Furniture Co. v. Department of Revenue* (1985), 109 Ill. 2d 202.) If the objector wanted to have the matter sub-

mitted to judicial review, he was required to comply with the 10-day time limit prescribed by section 10—10.1 of the Election Code; failure to observe that time limit would deprive the circuit court of subject matter jurisdiction over the cause. In this case, the objector filed his petition for judicial review on January 28, 1988, more than 10 days after the State electoral board issued its initial, adverse decision on January 15, 1988. The objector failed to commence a timely proceeding for judicial review, and therefore the circuit court lacked jurisdiction over the matter.

Because the appeal must be dismissed, we are precluded from considering the additional arguments raised by the parties in the present action. Similarly, our result here has mooted the candidate's motion, which we ordered taken with the case, to strike portions of the objector's brief.

For the reasons stated, the judgments of the appellate court and of the circuit court of Sangamon County are vacated, and the appeal is dismissed.

*Judgments vacated;*
*appeal dismissed.*

JUSTICE RYAN took no part in the consideration or decision of this case.