KELLIE NELSON, Petitioner-Appellant, v. MICHELLE QUALKINBUSH *et al.*, Respondents-Appellees.—PAM CAP, Petitioner-Appellant, v. GERALD TARKA *et al.*, Respondents-Appellees.

First District (3rd Division)  Nos. 1—09—0309, 1—09—0310 cons.

Opinion filed March 18, 2009.

Keri-Lyn J. Krafthefer, David Lincoln Ader, and Jeffrey R. Jurgens, all of Ancel, Glink, Diamon, Bush, DiCianni & Krafthefer, of Chicago, for appellants.

Burton S. Odelson and Matthew M. Welch, both of Odelson & Sterk, Ltd., of Evergreen Park, and James P. Nally, of James P. Nally, P.C., of Chicago, for appellees.

JUSTICE MURPHY delivered the opinion of the court:

This opinion considers the arguments made by petitioners Pam Cap and Kellie Nelson regarding the dismissal of their individual petitions for judicial review. Petitioners sought to challenge the decisions of respondent Municipal Officers Electoral Board of the City of Calumet City (Board) sustaining objections to their nomination papers

to run for nominations to the Democratic Party in the February 24, 2009, primary election in the City of Calumet City. Nelson submitted nomination papers to run for the nomination for the Democratic Party candidate for the office of city clerk of the City of Calumet City. Cap filed nomination papers to run for the nomination for the Democratic Party candidate for the office of mayor of the City of Calumet City.

Respondent Michael Zimmerman filed objections with the Board to both petitioners' candidacy. Zimmerman alleged that Nelson inadequately identified the office she was seeking the nomination for in her nominating papers. The chief objection to Cap's candidacy was that, as a member of the Calumet City police department, she could not run for the office of mayor of the City of Calumet City without first resigning her post as a police officer.

On January 15, 2009, the Board issued an oral ruling, sustaining the objections and removing petitioners as partisan candidates. The Board issued a written ruling on January 19, 2009. On January 20, 2009, petitioners filed their petitions for judicial review with the clerk of the circuit court of Cook County. On February 3, 2009, the trial court dismissed Cap's petition for judicial review for lack of subject matter jurisdiction. The trial court based its decision on Cap's failure to both serve the Board and to file proof of service with the clerk of the circuit court of Cook County. On February 4, 2009, Nelson's petition was dismissed for lack of subject matter jurisdiction for her failure to serve the Board. These appeals followed.

Respondents filed motions to dismiss the appeals as moot. Respondents assert that on February 5, 2009, both petitioners filed declarations of intent to run as independent write-in candidates in the April 7, 2009, consolidated general election, rendering these appeals moot. On February 17, 2009, following briefing on the motion, this court heard oral argument on respondents' motions to dismiss the appeals and considered the issues of jurisdiction and mootness. Because of the time-sensitive nature of these cases, this court issued short written orders issued dismissing the cases for want of subject matter jurisdiction, with notation that a full opinion would follow.

While this court earlier denied respondents' motion to consolidate petitioners' appeals, that decision rested on the different objections that the Board ruled on for each petitioner. As we need not reach the merits of petitioners' individual appeals, the facts and analysis are sufficiently the same for both appeals at this juncture. Therefore, we have consolidated the cases for this opinion. For the following reasons, this court affirms the trial court's dismissal of petitioners' petitions for judicial review and dismisses the appeals for lack of subject matter jurisdiction.

## I. BACKGROUND

On January 20, 2009, petitioners filed their petitions for judicial review with the circuit court of Cook County pursuant to section 10—10.1 of the Election Code (Code) (10 ILCS 5/10—10.1 (West 2006)), naming the Board, Zimmerman, Cook County Clerk David D. Orr, and the three members that sat on the Board for their individual hearings as respondents. On January 21, 2009, petitioners filed several emergency motions, seeking to stay the decision of the Board, expedite consideration of the petitions, bar the Board from acting as an advocate in the proceedings and to appoint a special process server. Petitioners filed service lists and certificates of service of the notices for the emergency motion, though the certificates of service for two of the emergency motions were unsigned. Although the Board was not listed as a party on the service lists, it filed appearances and answers to the petitions on January 27, 2009. The remaining respondents also filed appearances and answers between January 27 and 30, 2009.

On February 2, 2009, respondents moved to dismiss the petitions for petitioners' failure to comply with the jurisdictional requirements of section 10—10.1 of the Code. Namely, respondents argued that petitioners failed to properly serve the petitions on the Board. Respondents also alleged that petitioners had failed to file proof of service of the petitions with the clerk of the circuit court of Cook County.

On February 3, 2009, petitioners filed proofs of service for the petitions with the clerk of the circuit court of Cook County. Petitioners filed affidavits of service from the appointed special process server indicating personal service was made on the individual respondents on January 22, 2009. Petitioners also filed the certified mail receipts indicating the individual respondents received service of the petitions between January 23 and 26, 2009. The receipts indicate that the individual respondents received service both at their homes, and for the members of the Board, at the City of Calumet City building. In addition, petitioners note the attorneys for the Board and the individual respondents also were served by regular and certified mail. While petitioners state that the service by certified mail is undisputed, and respondents do not raise this issue, it is interesting to note that the receiving agent who signed the certified mail receipts for several of respondents is the same, both for the various respondents' home and city addresses.

The trial court heard argument on respondents' motion to dismiss Cap's petition on February 3, 2009. Cap asserts that she had her proof of service for the petition prepared and presented to the trial court during argument on the motions. The trial court granted respondents'

motion to dismiss with prejudice. The trial court determined that it lacked jurisdiction to hear the matter for Cap's failure to serve the Board and failure to file proof of service of the petition for judicial review with the clerk of the court. The trial court also denied a request to stay the dismissal order.

The trial court heard argument on the motion to dismiss Nelson's petition on February 4, 2009. The trial court dismissed Nelson's petition for want of jurisdiction based on Nelson's failure to serve the Board. The trial court also denied Nelson's request to stay the dismissal order. On February 4, 2009, petitioners officially filed the proof of service, allegedly for proof of service to the Board, with the clerk of the circuit court. Also, on February 4, 2009, petitioners filed notices of appeal for these actions.

On February 5, 2009, petitioners each filed with the Cook County clerk their written declaration to be independent write-in candidates for the April 7, 2009, consolidated general election. On February 9, 2009, respondents filed their motions to dismiss the appeals as moot. Respondents filed objections to the motions to dismiss and the parties filed their briefs on the merits of petitioners' appeals. Oral argument was held on February 17, 2009, to examine the mootness and jurisdiction questions. In a summary order, this court dismissed the appeals for lack of jurisdiction and this opinion follows.

## II. ANALYSIS

Respondents assert that no actual controversy exists in either case because petitioners' declarations of intent to run as independent write-in candidates eliminated this court's ability to grant effectual relief. Respondents argue that by declaring, petitioners waived their ability to be candidates in the primary election. Respondents also argue that the trial court properly determined that petitioners failed to meet the requirements of the Code to establish subject matter jurisdiction. Whether the trial court, or this court, was deprived of subject matter jurisdiction by petitioners' alleged failed compliance with the Code is a question of law and such jurisdictional determinations are reviewed *de novo*. *Bono v. Chicago Transit Authority*, 379 Ill. App. 3d 134, 139 (2008).

Because we hold that we do not have jurisdiction over these appeals, we need not render a decision on respondents' motion to dismiss the appeals as moot. However, as highlighted at oral argument, we recognize the frustration and confusion the Code sometimes engenders and the insular professional core such a specialized subject can create. Accordingly, for purposes of guidance to the bar and future candidates, we begin with a brief discussion of the mootness issue and a sugges-

tion to the legislature to clarify the write-in candidate provision of the Code.

## A. Respondents' Motion to Dismiss Appeals as Moot

An appeal must be dismissed as moot when it presents no actual controversy because intervening events have rendered any grant of effectual relief by the reviewing court impossible. *Richardson v. Rock Island County Officers Electoral Board*, 179 Ill. 2d 252, 256 (1997). Respondents offer the convincing argument that when petitioners filed their declarations of intent to run as write-in candidates, they were prohibited from seeking partisan candidacy. In support, respondents contend that under Article III of the Illinois Constitution (Ill. Const. 1970, art. III, §3), which requires elections be free and equal, a candidate's declaration to run as an independent write-in candidate waives that candidate's ability to run as a partisan candidate. Respondents assert that the cases discussing whether elections are free and equal hold that voter confusion must be avoided and candidates are allowed the opportunity to appear upon the ballot only once. *People ex rel. McCormick v. Czarnecki*, 266 Ill. 372, 380 (1914). Alternatively, respondents contend the doctrine of election of remedies mandates a finding of mootness because petitioners adopted a coexisting remedy that precludes the remedy requested in this court. *Rotogravure Service, Inc. v. R.W. Borrowdale Co.*, 77 Ill. App. 3d 518, 526-27 (1979).

Petitioners respond that they had no choice but to file their declarations of intent on February 5, 2009, pursuant to the language of the Code. See 10 ILCS 5/17—16.1 (West Supp. 2007). Petitioners contend that, under the Code, they had no choice of remedies because if they had not timely filed their declarations of intent to be write-in candidates, that opportunity would have been lost. With the trial court affirming their removal from the ballot, petitioners argue that they were faced with the chance of not appearing on the ballot at all. The key to this issue is the language of section 17—16.1, which reads, in pertinent part:

> "Write-in votes shall be counted only for persons who have filed notarized declarations of intent to be write-in candidates with the proper election authority or authorities not later than 61 days prior to the election. However, whenever an objection to a candidate's nominating papers or petitions for any office is sustained under Section 10—10 after the 61st day before the election, then write-in votes shall be counted for that candidate if he or she has filed a notarized declaration of intent to be a write-in candidate for that office with the proper election authority or authorities not later than 7 days prior to the election.

\* \* \*

A candidate for whom a nomination paper has been filed as a partisan candidate at a primary election, and who is defeated for his or her nomination at the primary election is ineligible to file a declaration of intent to be a write-in candidate for election in that general or consolidated election." 10 ILCS 5/17—16.1 (West Supp. 2007).

This case highlights the confusion regarding this section due to the absence of any specific language concerning the effect of judicial review. With the circuit court dismissing the petitions 63 and 62 days before the general election, it is easy to comprehend why petitioners declared their intent to run as write-in candidates, even though they still sought to run for the nominations as partisan candidates in the primary election. However, we must construe this section following the cardinal rule of statutory construction, giving the words their plain meaning to ascertain and give effect to the true intent of the legislature for this section and the Code as a whole. *Zack v. Ott*, 381 Ill. App. 3d 545, 549 (2008).

Contrary to petitioners' arguments, because there was an objection to their nominating papers under section 10—10 of the Election Code (10 ILCS 5/10—10 (West 2006)), and judicial review was sought, the objection was not fully resolved when these appeals were filed. The Board remained a living entity under the Code, as a named party in the cases before the circuit court and as a named party in these appeals. The Board had yet to discharge its statutory duties as its decision had yet to be certified with the original nomination papers and objector's petition pursuant to section 10—10 of the Code. If petitioners had succeeded in the trial court or this court, they would have been placed on the primary ballot. Had this occurred and they subsequently lost in the primary, section 17—16.1 would have barred them from filing a declaration of intent to be a write-in candidate in the general or consolidated election.

While not explicitly stated in the Code, the provisions of the Code and the policy in Illinois favoring ballot access lead us to the conclusion that a candidate should not be denied the opportunity to be a write-in candidate if her pursuit of judicial review of an objection ultimately fails after 61 days before the general or consolidated election. See *McGuire v. Nogaj*, 146 Ill. App. 3d 280, 282 (1986). The Code grants a candidate the ability to declare up to 7 days before the election if an objection is sustained less than 61 days before the general or consolidated or general election. When this is viewed in concert with the bar against losing primary candidates running as write-in candidates, it compels the conclusion the legislature intended those

properly complying with the Code not be barred from having the opportunity to run as write-in candidates. Furthermore, the case law following *Czarnecki* rejects the idea of a candidate appearing twice on a ballot, but does not foreclose a party who has appealed a sustained objection from appearing on the ballot as a write-in candidate should that candidate lose in court.

Following this discussion, logic also supports the argument that petitioners' declarations of intent run contrary to the instant appeals. These declarations leave this court without the possibility of effectual relief because petitioners could not run both in the primary and as write-in candidates. Specific language should be added to this section to spell out that a party properly pursuing judicial review of a sustained objection may declare her intent to run as a write-in candidate following resolution by the court. This would alleviate candidates' concerns that they may not be allowed on the ballot and allow for more efficient resolution of disputes.

## B. Subject Matter Jurisdiction Under Section 10—10.1 of the Election Code

■ More importantly, for the resolution of the instant appeals, the fact remains that Illinois courts may only exercise jurisdiction over election cases when provided for by statute. *Pullen v. Mulligan*, 138 Ill. 2d 21, 32 (1990). Section 10—10.1 of the Election Code (10 ILCS 5/10—10.1 (West 2006)) provides the process for judicial review of a decision of an electoral board. Section 10—10.1 includes four explicit prerequisites to establish subject matter jurisdiction and reads, in pertinent part:

> "Except as otherwise provided in this Section, a candidate or objector aggrieved by the decision of an electoral board may secure judicial review of such decision in the circuit court of the county in which the hearing of the electoral board was held. The party seeking judicial review must file a petition with the clerk of the court within 10 days after the decision of the electoral board. The petition shall contain a brief statement of the reasons why the decision of the board should be reversed. The petitioner shall serve a copy of the petition upon the electoral board and other parties to the proceeding by registered or certified mail and shall file proof of service with the clerk of the court. No answer to the petition need be filed, but any answer must be filed within 10 days after the filing of the petition." 10 ILCS 5/10—10.1 (West 2006).

If this mode of procedure is not strictly pursued, no jurisdiction is conferred upon the circuit court. *Johnson v. Theis*, 282 Ill. App. 3d 966, 971 (1996). Therefore, failure to strictly comply with the requirements of this section invites dismissal for lack of subject matter

jurisdiction under section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 2004). *Bill v. Education Officers Electoral Board*, 299 Ill. App. 3d 548, 551-52 (1998). Likewise, lack of strict compliance deprives this court of jurisdiction and dismissal of an appeal is proper. *Hough v. Will County Board of Elections*, 338 Ill. App. 3d 1092, 1094 (2003). Accordingly, respondents' motions to dismiss must be granted if strict compliance with section 10—10.1 is not demonstrated in the record, "unaided by any presumption or matter outside of the record." *Allord v. Municipal Officers Electoral Board*, 288 Ill. App. 3d 897, 902 (1997).

First, based on the cases cited above, the rule of strict compliance with the Election Code to establish subject matter jurisdiction is abundantly clear. Rhetorical flourishes aside, respondents' arguments that technical gamesmanship and such quibbles with the mechanics of service must not outweigh substantive rights in this case must be rejected. Whether or not the presence of the parties during the course of the cases below satisfies the purpose of the statute or any other considerations is irrelevant if there was not strict compliance with the statute to establish jurisdiction. Therefore, the two grounds for the dismissals will be considered.

### 1. *Service Upon the Electoral Board*

■ There can be no doubt that section 10—10.1 requires service on the Board. As noted above, it is the Board that issues decision on an objection and must send certification of that decision to the officer or board who receives nomination certifications after the judicial review period runs. Therefore, it follows that the Code requires that service must be effected on *both* the Board as the entity making the decision and its members who voted on the decision to obtain jurisdiction over them. *Russ v. Hoffman*, 288 Ill. App. 3d 281, 284 (1997); *Bill*, 299 Ill. App. 3d at 552; *Johnson*, 282 Ill. App. 3d at 971. Service on the attorney for the Board is not sufficient for purposes of meeting the requirements of the Code. *Hough*, 338 Ill. App. 3d at 1094. While the Second District of this court recently distinguished *Russ*, *Bill* and *Johnson*, to support its holding that section 10—10.1 does not require naming the Board as a party in the caption for jurisdictional purposes, it did not attack those cases' treatment of the service issue. *Zack*, 381 Ill. App. 3d at 552-53.

Petitioners argue that the testimony of the city clerk that no petition was served on her office is irrelevant because each of the Board members was properly served both at home and at the city building. Petitioners also contend that the Code is silent as to where or how to

serve the Board. They continue that this confusion is compounded by the fact the Board is an amorphous entity that disappears following the election cycle. Therefore, petitioners assert that this court should resort to the guidance provided for service of various entities under the Administrative Review Law (735 ILCS 5/2—101 *et seq.* (West 2006)), which is by serving the officers of the Board.

Petitioners' concerns that compliance is near impossible because the Board is temporary, unknown or nonexistent and service may be impossible are unfounded in these cases. While petitioners correctly state that the Board is a temporary entity, sections 10—9 and 10—10 of the Code specifically detail who must comprise the Board and where and when it must meet. 10 ILCS 5/10—9, 10—10 (West 2006). Under section 10—10 of the Code, the Municipal Officers Electoral Board is required to meet where the governing body of the municipality holds its meetings. Accordingly, the Board conducts its business at the City of Calumet City building and the Board may be served there by filing with the city clerk.

The actions of the parties indicate that they all clearly understood this. Petitioners both filed their nomination papers to be certified by the Board with the city clerk of Calumet City as required by the Code. Zimmerman also filed his objections to petitioners' nomination papers with the Board by filing them with the city clerk. Further, section 10—10 requires the Board to remain intact at least through the expiration of the period within which a proceeding for judicial review must be commenced to transmit its rulings. 10 ILCS 5/10—10 (West 2006). In addition, despite the fact resort to the Administrative Review Law to interpret who must be served has been found to be "useful," contrary to petitioners' assertions, it "has no direct bearing upon the clearly drawn procedural mechanisms that must be followed when an electoral board decision is appealed under [section 10—10.1]." *Bill,* 299 Ill. App. 3d at 556.

We agree with respondents that *Allord* supports dismissal for petitioners' failure to serve the Board. In *Allord,* this court stated that the limited time frames to election proceedings required prompt service to permit an opportunity to answer within the short 10-day period. *Allord,* 288 Ill. App. 3d at 903. The petitioner in *Allord* attached proof of service to his petition that included the electoral board and the attorney of the other candidates, but not the candidates personally. *Allord,* 288 Ill. App. 3d at 903. Therefore, the petitioner's failure to serve the necessary parties within 10 days of filing his petition precluded the court from exercising jurisdiction. *Allord,* 288 Ill. App. 3d at 904.

In *Delay v. Board of Election Commissioners*, 312 Ill. App. 3d 200 (2000), this court analyzed the holding in *Allord* and provided further support for our conclusion. The *Delay* court noted that in *Bill*, the court seized on the "promptly" language from *Allord* when it held that service upon the individual electoral board members in that case was required within 10 days of the electoral board decision. *Delay*, 312 Ill. App. 3d at 204, citing *Bill*, 299 Ill. App. 3d at 555-56. However, the *Delay* court concluded that this ignored the subsequent discussion and the proper reading of *Allord* may only lead to the finding that *Allord* required service within 10 days of the filing of the petition. *Delay*, 312 Ill. App. 3d at 204-05. While the *Delay* court reversed a finding of lack of jurisdiction, it did so because the petitioner followed the requirements of section 10—10.1 by serving the board of election commissioners, the commissioners individually, and the objector within 10 days of filing his petition for judicial review. *Delay*, 312 Ill. App. 3d at 204-05. Importantly, the petitioner also filed proof of service with the clerk of the court that specifically detailed service of the electoral board and the individual commissioners. *Delay*, 312 Ill. App. 3d at 205.

In the instant case, there is no evidence of record that petitioners served the Board or filed proof of service for all necessary parties until February 4, 2009. The certificates of service for petitioners' various motions filed within 10 days of filing their petitions do not identify the Board as a party served. Under the line of cases from *Johnson* to *Allord* to *Bill*, it is clear the electoral board must be served. *Delay* follows those cases in stating that the electoral board and its members are necessary parties to the proceeding. Accordingly, petitioners failed to strictly comply with the requirements of the Code by their failure to serve the Board. This court therefore has been deprived of jurisdiction and dismissal is proper.

## 2. *Proof of Service*

The trial court also determined that it lacked jurisdiction with respect to Cap's petition because she had failed to file proof of service with the clerk of the circuit court as required under section 10—10.1. Cap argues that section 10—10.1 does not contain a specific time limitation for filing proof of service with the clerk of the circuit court. Cap notes that, although she had not filed it with the clerk until February 4, 2009, her proof of service was presented to the court at the February 3, 2009, hearing on the motion. She maintains that as the parties were all present in court, the proof was presented to the trial court, and the statute does not contain a time restriction, the fact

that the simple ministerial act of filing the proof with the clerk does not support dismissal for lack of jurisdiction.

Respondents argue that the requirement of section 10—10.1 is clear that proof of service must be filed with the clerk of the circuit court and Cap failed to file her proof of service with the clerk of the circuit court prior to the hearing on the motion to dismiss. While respondents do not discuss Nelson's case under this issue, the effect of her filing proof of service on February 4, 2009, is raised by Cap's claim that her proof of service issue was cured by the late filing. It is also raised by respondents' argument in Cap's appeal that the holding in *Delay* logically leads to the requirement that proof of service be filed within 10 days after the filing of the petition. We agree with respondents and find that this fact supports a finding of lack of jurisdiction for *both* appeals because both petitioners filed their proof of service 15 days after the filing of their petitions for judicial review.

We agree with the *Delay* court's interpretation of *Allord* and find that the jurisdictional requirement of filing proof of service with the clerk of the circuit court must be fulfilled within 10 days of filing the petition. This is underscored by respondents' comments that, unlike the court in *Allord,* which had proof of service attached to the petition, the trial court here did not benefit from a proof of service attached to the petitions to review. The trial court for Cap's case also had no file-stamped proof of service to examine to determine if the jurisdictional prerequisites were met. The extreme time constraints that election cases are faced with support the finding that proof of service must be filed within 10 days of filing.

It is important to note that proof of service does not require filing of registered or certified mail receipts, but under Supreme Court Rule 12(b)(3), the certificate of the attorney or affidavit of another person who mailed the petition would be sufficient. 145 Ill. 2d R. 12(b)(3). Subsequent filing of return receipts or additional affidavits of service under an abundance of caution is not to be discouraged, as further proof of service. However, to establish jurisdiction, filing proof within 10 days assists the trial court in quickly assuring jurisdiction and that all parties are on notice and have the opportunity to be heard.

The evidence of record indicates that petitioners failed to file proof of service with the clerk of the circuit court until after the trial court had already entered its dismissal order. Petitioners' subsequent actions cannot overcome the trial court's determination it did not have subject matter jurisdiction. Furthermore, the evidence of record also indicates that the Board was not served as required by section 10—10.1. Accordingly, petitioners' failure to comply with section 10—10.1 has deprived this court of subject matter jurisdiction and the appeals must be dismissed.

## III. CONCLUSION

For the aforementioned reasons, the petitioners' appeals are dismissed for lack of subject matter jurisdiction.

Appeals dismissed.

QUINN and COLEMAN, JJ., concur.